IN THE MATTER OF THE FORECLOSURE OF THE DEED OF TRUST OF VOGLER REALTY, INC., Mortgagor-Grantor, to CHARLES N. STEDMAN, Trustee, and J.B. LEE & COMPANY, a North Carolina General Partnership, Noteholder As Recorded in Deed of Trust Book 1090, Page 338

No. 11A11

(Filed 27 January 2012)

## Attorney Fees— foreclosure proceeding—no statutory authority for clerk of superior court to determine reasonableness

The Court of Appeals did not err by concluding that the clerk of superior court did not have the authority to determine the reasonableness of attorney fees that a trustee-attorney in a foreclosure proceeding paid to himself in addition to his trustee's commission absent a viable challenge for breach of fiduciary duty from a creditor with standing. Instead, the clerk's audit under N.C.G.S. § 45-21.33(a) and (b) was a ministerial act that was limited to determining whether the entries in the report reflected the actual receipts and disbursements made by the trustee in the absence of a grant of original jurisdiction to determine additional matters.

Justice NEWBY dissenting.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, —— N.C. App. ——, 703 S.E.2d 159 (2010), vacating an order entered on 4 November 2009 by Judge Ronald L. Stephens in Superior Court, Alamance County. Heard in the Supreme Court on 6 September 2011.

*Bell, Davis & Pitt, P.A., by Michael D. Phillips and Michael A. Myers, for petitioner-appellant CommunityOne Bank, N.A.*

**IN RE FORECLOSURE OF VOGLER REALTY, INC.**

[365 N.C. 389 (2012)]

*Stedman Law, by Charles N. Stedman, pro se, for Trustee-appellee.*

JACKSON, Justice.

In this appeal we consider whether the clerk of superior court has the authority to determine the reasonableness of attorney's fees that a trustee-attorney in a foreclosure proceeding pays to himself in addition to his trustee's commission. Because we hold that the clerk of superior court lacks this authority, we affirm.

On 26 June 1997, Vogler Realty, Inc. ("debtor") executed a promissory note payable to J.B. Lee & Company ("creditor") in the principal amount of $250,000.00. The promissory note was secured by a duly recorded deed of trust on commercial real estate owned by debtor. The deed of trust named Charles N. Stedman, a licensed attorney, as trustee. The deed of trust included a power of sale and provided for the payment of "reasonable" attorney's fees as a cost thereof, stating in pertinent part: "The Trustee shall be authorized to retain an attorney to represent him in [foreclosure] proceedings. The proceeds of the Sale shall after the Trustee retains his commission, together with reasonable attorneys [sic] fees incurred by the Trustee in such proceeding, be applied to the costs of sale . . . ." The property also was encumbered by Robert J. Wishart as the second priority lienholder, CommunityOne Bank, N.A. as the third priority lienholder, and Fidelity Bank as the fourth priority lienholder.

Debtor defaulted on its obligations pursuant to the promissory note and deed of trust by failing to make payments to creditor after 13 January 2009. Creditor thereafter accelerated the entire outstanding balance owed in accordance with the promissory note and demanded payment in full. On 20 March 2009, Stedman, in his capacity as trustee, filed a petition and notice of hearing on foreclosure in the Superior Court, Alamance County pursuant to the power of sale contained in the deed of trust. The petition stated that Stedman was a neutral party and would not advocate for either debtor or creditor.

At a hearing before the Alamance County Clerk of Court (the "clerk") on 21 April 2009, debtor admitted default and did not contest the foreclosure proceedings. Thereafter, the clerk made the required findings of fact and entered an order authorizing Stedman to proceed with the foreclosure sale. Stedman held the foreclosure sale on 13 May 2009 and subsequently filed a report of sale. Two upset bids were filed after the sale. Debtor's right of redemption expired on 11 June 2009,

**IN RE FORECLOSURE OF VOGLER REALTY, INC.**

[365 N.C. 389 (2012)]

after which the final sale was consummated. On 26 June 2009, Stedman submitted the final report and account of foreclosure sale to the clerk for audit and approval in accordance with sections 45-21.31 and 45-21.33 of the North Carolina General Statutes. According to the final report, the final sale generated proceeds totaling $336,262.50.

From the proceeds Stedman, as trustee, paid the costs and expenses of the foreclosure proceeding, including: (1) a trustee's commission of $16,813.12 (5% of the highest upset bid[1] pursuant to section 45-21.15(a) of the North Carolina General Statutes); and (2) a trustee's attorney's fee of $33,573.82 (15% of the outstanding balance on the promissory note). The remaining proceeds were disbursed as follows: (1) $229,762.30 to creditor; (2) $31,685.61 to Wishart; and (3) $22,743.65 to CommunityOne. Fidelity Bank, the fourth priority lienholder, received nothing. The distributions fully satisfied the debts owed to creditor and Wishart, but CommunityOne still was owed a balance of $78,862.60.

On 13 July 2009, CommunityOne filed a motion before the Clerk of Superior Court, Alamance County, objecting to Stedman's disbursement of the proceeds on the basis that Stedman failed to demonstrate any justification for paying himself attorney's fees in addition to his trustee's commission. In response to CommunityOne's motion, Stedman filed an affidavit and itemization showing the services that he performed, his usual hourly rate ($300.00 per hour), and the time he spent working on the foreclosure proceeding (71.8 hours). Based upon the documentation submitted by Stedman, the value of his services amounted to $21,540.00.

On 27 July 2009, following a hearing on CommunityOne's motion, the clerk approved the five percent (5%) trustee's commission, but reduced Stedman's attorney's fees to $4,726.88. Pursuant to the clerk's order, Stedman would receive $21,540.00 total, an amount equal to the total value of his trustee and attorney services according to the statements and figures Stedman provided in his affidavit and itemization. Stedman appealed to the superior court. After holding a hearing on 12 October 2009, the superior court affirmed the clerk's order on 4 November 2009. Stedman appealed to the Court of Appeals.

The Court of Appeals, in a divided opinion, vacated the clerk's and trial court's orders, holding that the clerk lacked the statutory authority to determine the reasonableness of attorney's fees paid in a foreclosure proceeding. *In re Foreclosure of Vogler Realty, Inc.*, —— N.C. App. ——,

---

1. CommunityOne submitted the first upset bid.

——, 703 S.E.2d 159, 164 (2010). The dissenting opinion argued that section 32-61 of the North Carolina General Statutes authorizes a clerk to determine the reasonableness of attorney's fees that a trustee-attorney seeks to pay to himself in a foreclosure proceeding. *Id.* at ——, 703 S.E.2d at 165-68 (Hunter, Jr., Robert N., J., dissenting). CommunityOne filed notice of appeal with this Court based upon the dissent.

CommunityOne argues that section 32-61 of the North Carolina General Statutes authorizes the clerk of superior court to determine the reasonableness of a trustee-attorney's payment of attorney's fees to himself in a foreclosure proceeding. We disagree.

We review matters of statutory interpretation de novo because they present questions of law. *In re Ernst & Young, LLP*, 363 N.C. 612, 616, 684 S.E.2d 151, 154 (2009). "[W]hen the language of a statute is ambiguous, this Court will determine the purpose of the statute and the intent of the legislature in its enactment." *Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006). In these situations, "the history of the legislation may be considered in connection with the object, purpose and language of the statute in order to arrive at its true meaning." *Lithium Corp. of Am. v. Town of Bessemer City*, 261 N.C. 532, 536, 135 S.E.2d 574, 577 (1964). However, "[w]hen the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required." *Diaz*, 360 N.C. at 387, 628 S.E.2d at 3.

Article 6 of Chapter 32 of the North Carolina General Statutes is titled, "Compensation of Trustees and Other Fiduciaries." Section 32-61 states:

> The clerk of superior court may exercise discretion to allow counsel fees to an attorney serving as a fiduciary or trustee (in addition to the compensation allowed to the attorney as a fiduciary or trustee) where the attorney, on behalf of the trust or fiduciary relationship, renders professional services as an attorney that are different from the services normally performed by a fiduciary or trustee and of a type which would reasonably justify the retention of legal counsel by a fiduciary or trustee who is not licensed to practice law.

N.C.G.S. § 32-61 (2009). Both the majority and dissenting opinions in the Court of Appeals refer to section 32-61, and both opine that there is some applicability of this statute to a foreclosure sale. The majority would limit its applicability to a foreclosure sale that is "incomplete and

terminated pursuant to N.C.G.S. § 45-21.20" in reliance on its precedent in *In re Foreclosure of Newcomb*, 112 N.C. App. 67, 72-74, 434 S.E.2d 648, 651-52 (1993). *In re Vogler*, —— N.C. App. at ——, 703 S.E.2d at 163. The dissent would go further, contending that *Newcomb* is not limited to "only those situations in which the foreclosure was arrested by payment of the underlying debt pursuant to N.C.[G.S.] § 45-21.20." *Id.* at ——, 703 S.E.2d at 165 (Hunter, J., dissenting). We reject both propositions. Instead, we read section 32-53(4) as providing that Article 6 applies only to trusts as defined in the North Carolina Uniform Trust Code. *See* N.C.G.S. § 32-53(4) (2009). Chapter 36C, the Uniform Trust Code, expressly excludes from its scope "trusts for the primary purpose of paying debts." *Id.* § 36C-1-102 (2009). Significantly, the Uniform Trust Code states that "[t]he term [trustee] does not include trustees in mortgages and deeds of trust." *Id.* § 36C-1-103(22) (2009). Therefore, section 32-61 does not apply to trustee-attorneys in foreclosure proceedings.

This conclusion also is supported by the legislative history of Article 6. "When interpreting a statute, we ascertain the intent of the legislature, first by applying·the statute's language and, if necessary, considering its legislative history and the circumstances of its enactment." *Shaw v. U.S. Airways, Inc.*, 362 N.C. 457, 460, 665 S.E.2d 449, 451 (2008). Although the statute in the instant case is relatively straightforward, there is ample legislative history that also supports our construction of the General Assembly's intention. The bill analysis for Senate Bill 470, the legislation that revised and repealed Article 5 to create Article 6, states that "Senate Bill 470 rewrites the law dealing with the compensation of trustees and other fiduciaries when the terms of certain trusts do not specify the compensation." Staff of N.C. Sen. Comm. on Jud. II, *Summary of S. 470: Compensation of Trustees/Other Fiduciaries*, 2003 Reg. Sess. 1 (Apr. 10, 2003). The bill analysis routinely refers to both trustees and other fiduciaries in the context of "trusts," but never with respect to "deeds of trust" or other instruments. *See id* at 2. (stating, for example, that "G.S. 32-58 would authorize the clerk of court, upon written request by a fiduciary other than the trustee, to determine reasonable compensation for that fiduciary, unless prohibited by *the trust*" (emphasis added)). Moreover, the bill analysis expressly states the legislature's intent that the word "trust" "have the same meaning as it has in Article 3 of Chapter 36A," *id.* at 1, which used substantially the same definition of "trust" that currently is found in the Uniform Trust Code. *Compare* N.C.G.S. § 36A-22.1, *repealed by* Act of July 7, 2005, ch. 192, sec. 1, 2005 N.C. Sess. Laws 345, 345, *with* N.C.G.S. § 36C-1-102 (2009). Construing the language of

Article 6 in conjunction with its legislative history, we believe it is clear that the legislature intended Article 6 to encompass trustees and other fiduciaries only in the context of trusts subject to the North Carolina Uniform Trust Code. Therefore, we conclude that section 32-61 of the North Carolina General Statutes is inapplicable in a foreclosure by power of sale pursuant to a deed of trust.

Instead, our foreclosure statutes, specifically, Article 2A of Chapter 45 of the North Carolina General Statutes, control the case *sub judice*. Section 45-21.31(a) outlines the procedure for distributing the proceeds of a foreclosure sale:

(a) The proceeds of any sale shall be applied by the person making the sale, in the following order, to the payment of—

(1) Costs and expenses of the sale, including the trustee's commission, if any, and a reasonable auctioneer's fee if such expense has been incurred;

(2) Taxes due and unpaid on the property sold, as provided by G.S. 105-385, unless the notice of sale provided that the property be sold subject to taxes thereon and the property was so sold;

(3) Special assessments, or any installments thereof, against the property sold, which are due and unpaid, as provided by G.S. 105-385, unless the notice of sale provided that the property be sold subject to special assessments thereon and the property was so sold;

(4) The obligation secured by the mortgage, deed of trust or conditional sale contract.

N.C.G.S. § 45-21.31(a) (2009). The costs and expenses listed in items (1), (2), and (3) are not the responsibility of the debtor or creditor, but rather "are simply obligations arising from the foreclosure sale which must be paid by the trustee before the remainder of the proceeds may be distributed." *Merritt v. Edwards Ridge*, 323 N.C. 330, 336, 372 S.E.2d 559, 563 (1988). Although not specifically listed in section 45-21.31(a)(1), a trustee's attorney's fee provided for in the deed of trust is a "cost[ ] and expense[ ] of the sale" and therefore, must be paid by the trustee. *See id.*; N.C.G.S. § 45-21.31(a)(1) (2009). After these proceeds have been distributed, section 45-21.33 mandates a final report of the sale and an audit by the clerk of superior court:

**IN RE FORECLOSURE OF VOGLER REALTY, INC.**

[365 N.C. 389 (2012)]

(a) A person who holds a sale of real property pursuant to a power of sale shall file with the clerk of the superior court . . . a final report and account of his receipts and disbursements . . . .

(b) The clerk shall audit the account and record it.

N.C.G.S. § 45-21.33(a), (b) (2009). Notably, this statute does not authorize the clerk to review the distribution of attorney's fees for reasonableness.

Indeed, we consistently have emphasized that the clerk of superior court has limited jurisdictional authority. "In this State the clerk of superior court is a court of very limited jurisdiction, having only such authority as is given by statute." *Cook v. Bradsher*, 219 N.C. 10, 13, 12 S.E.2d 690, 692 (1941). Thus, generally the clerk "has no common-law jurisdiction, nor does [the clerk] have any equitable jurisdiction." *McCauley v. McCauley*, 122 N.C. 288, 292, 30 S.E. 344, 345 (1898). Consequently, the clerk cannot perform functions involving the exercise of judicial discretion in the absence of statutory authority. *See Dixon v. Osborne*, 201 N.C. 489, 493, 160 S.E. 579, 581 (1931); *see also In re Estate of Parrish*, 143 N.C. App. 244, 251, 547 S.E.2d 74, 78 (stating that an estate proceeding is "not a civil action but a proceeding concerning an estate matter, which [is] exclusively within the purview of the Clerk's jurisdiction, and over which the Superior Court retain[s] appellate, not original jurisdiction"), *disc. review denied*, 354 N.C. 69, 553 S.E.2d 201 (2001).

In other contexts, when the legislature has intended for the clerk to possess discretionary authority over commissions and attorney's fees, it specifically has set forth this authority, prefaced with the use of "may" or "in the discretion of." *See* N.C.G.S. § 35A-1116(a) (2009) (guardianship); N.C.G.S. §§ 28A-23-3, 23-4 (2009) (estates); *see also Wachovia Bank & Trust Co. v. Waddell*, 237 N.C. 342, 345, 347, 75 S.E.2d 151, 153, 154 (1953) (stating that, under our prior estates statute, the allowance of commissions to an executor required the exercise of judicial discretion by the clerk of court). However, such a grant of authority is completely absent in section 45-21.33. *See Boseman v. Jarrell*, 364 N.C. 537, 545, 704 S.E.2d 494, 500 (2010) ("If the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." (internal quotation marks omitted)). Moreover, the audit itself is ministerial, rather than discretionary in nature, "because the law requires [the clerk] to do [it] without any application or request." *Bryan v. Stewart*, 123 N.C. 92, 97, 31 S.E. 286, 287 (1898); *see*

*also State ex. rel. Owens v. Chaplin*, 228 N.C. 705, 711, 47 S.E.2d 12, 16 (1948) (describing a ministerial duty as "a simple and definite duty imposed by law regarding which nothing [is] left to [the clerk's] discretion"). "[A] statute clear on its face must be enforced as written." *Bowers v. City of High Point*, 339 N.C. 413, 419-20, 451 S.E.2d 284, 289 (1994). Therefore, during the audit the clerk is not authorized to review the trustee-attorney's payment of attorney's fees to himself for reasonableness, as this action would involve an improper exercise of judicial discretion. Instead, the clerk's audit pursuant to section 45-21.33(a) and (b) is a ministerial act that is limited to determining merely "whether the entries in the report reflect the actual receipts and disbursements made by the trustee" in the absence of a grant of original jurisdiction to determine additional matters. *In re Foreclosure of Webber*, 148 N.C. App. 158, 161, 557 S.E.2d 645, 647 (2001).

As a result, the trustee is responsible for distributing the appropriate amount of attorney's fees in accordance with the provisions of the deed of trust. However, "reasonable" attorney's fees should not be construed to mean the fifteen percent (15%) fee allowed pursuant to section 6-21.2(2) of the North Carolina General Statutes as Stedman argues. *See* N.C.G.S. § 6-21.2(2) (2009) (generally governing the payment of attorney's fees in civil actions and proceedings and authorizing payment of a fifteen percent fee by a debtor to a creditor who collects on the underlying debt through an attorney). Section 6-21.2 is inapplicable to trustee's attorney's fees because the trustee is an agent of both the debtor and the creditor, *Mills v. Mut. Bldg. & Loan Ass'n*, 216 N.C. 664, 669, 6 S.E.2d 549, 552 (1940), and section 6-21.2 governs only attorney's fees for the creditor's attorney. *See* N.C.G.S. § 6-21.2 (2009). Accordingly, if the deed of trust calls for "reasonable" attorney's fees then the trustee should distribute a reasonable amount under the circumstances.

This conclusion is consistent with the purpose underlying deeds of trust. "The object of deeds of trust is, by means of the introduction of trustees as impartial agents of the creditor and debtor alike, to provide a convenient, cheap and speedy mode of satisfying debts on default of payment; to assure fair dealing and eliminate the opportunity for oppression; to remove the necessity of the intervention of the courts; and to facilitate the transfer of the note or notes secured without the necessity for a similar transfer of the security." *Mills*, 216 N.C. at 669, 6 S.E.2d at 552. In the absence of statutory authority, the clerk of court has no role in assessing the reasonableness of attorney's fees.

**IN RE FORECLOSURE OF VOGLER REALTY, INC.**

[365 N.C. 389 (2012)]

Moreover, the aggrieved creditor is not left without a remedy, as it may, in appropriate circumstances, bring an action for breach of fiduciary duty against the trustee. *See id.* at 665-66, 6 S.E.2d at 549-50. This Court long has recognized that the trustee of a deed of trust stands in a fiduciary relationship with both the debtor and creditor. *See, e.g., id.* at 669-70, 6 S.E.2d at 552-53; *Gregg v. Williamson,* 246 N.C. 356, 360, 98 S.E.2d 481, 485 (1957) (recognizing that "[t]he trustee must be impartial in the performance of his duties" and cannot "give an unfair advantage to one [party] to the detriment of the other"); *Hinton v. Pritchard,* 120 N.C. 1, 3-4, 26 S.E. 627, 627 (1897). A fiduciary relationship is one in which "there has been a special confidence reposed in [another] who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Abbitt v. Gregory,* 201 N.C. 577, 598, 160 S.E. 896, 906 (1931). In the context of a deed of trust:

> The trustee for sale is bound by his office to bring the estate to a sale under every possible advantage to the debtor as well as to the creditor[,] and he is bound to use not only good faith but also every requisite degree of diligence in conducting the sale and to attend equally to the interest of the debtor and the creditor alike, apprising both of the intention of selling, that each may take the means to procure an advantageous sale. He is charged with the duty of fidelity as well as impartiality, of good faith and every requisite degree of diligence, of making due advertisement and giving due notice. Upon default his duties are rendered responsible, critical and active and he is required to act discreetly, as well as judiciously, in making the best use of the security for the protection of the beneficiaries.

*Mills,* 216 N.C. at 669, 6 S.E.2d at 552 (internal citations omitted).

However, we observe that prior decisions of this Court have not extended this fiduciary relationship beyond the foreclosing lienholder. *See, e.g., id.* at 669-71, 6 S.E.2d at 552-53; *Hinton,* 120 N.C. at 3, 26 S.E. at 627. As a corollary, a subordinate lienholder in this state is not entitled to notice of a foreclosure by power of sale. *See* N.C.G.S. § 45-21.16(b) (2009) (listing among the parties entitled to notice: (1) "[a]ny person to whom the security interest instrument itself directs notice to be sent in case of default"); (2) "[a]ny person obligated to repay the indebtedness"; and (3) "[e]very record owner of the real estate," which specifically "does not mean or include" any "holder of a . . . lien or security interest in the real property"); *cf. Certain-Teed Prods.*

*Corp. v. Sanders*, 264 N.C. 234, 241, 141 S.E.2d 329, 334 (1965) (stating that without a valid contract to do so a creditor is not required to give personal notice of a foreclosure by sale to a debtor or to a second priority lienholder); *Thompson v. State*, 223 N.C. 340, 342-44, 26 S.E.2d 902, 903-04 (1943) (holding, under our prior foreclosure statute, that junior lienholders are not interested parties in a proceeding to appoint a substitute trustee). For if the trustee owed a fiduciary duty to the subordinate lienholder, the trustee conceivably would be compelled to give the subordinate lienholder notice of the foreclosure sale so that the subordinate lienholder could enforce its rights. *See* N.C.G.S. § 45-21.16(a) (2009) (requiring a trustee exercising a power of sale to serve each party entitled to notice with a notice that specifies the time and place for a foreclosure hearing). This result is appropriate because it is incumbent upon a subordinate lienholder to contemplate the risk associated with subordinating its right to payment to that of a higher priority lienholder. *See* Patrick K. Hetrick et al., N.C. Real Estate Comm'n, *North Carolina Real Estate Manual* 459 (2008-09 ed. 2008) (stating that "[s]ince a junior mortgage can be satisfied from the proceeds of a sale to foreclose a senior mortgage only after the prior (senior) mortgage has been fully satisfied, a lender taking a junior mortgage as security incurs a greater risk than one who receives a first mortgage"). In addition, the subordinate lienholder is not left without recourse, because it has an adequate means to compensate for this risk by charging a higher interest rate on the debt. *Id.* Therefore, we affirm our previous decisions holding that, in the context of a foreclosure sale, only a foreclosing lienholder may bring a claim for breach of fiduciary duty against the trustee of a deed of trust being foreclosed upon.

In the case *sub judice* the clerk should have limited his audit to determining only "whether the entries in the report reflect[ed] the actual receipts and disbursements made by [Stedman]" pursuant to section 45-21.33 of the North Carolina General Statutes. *In re Webber*, 148 N.C. App. at 161, 557 S.E.2d at 647. The clerk was not authorized to review Stedman's payment of attorney's fees to himself for reasonableness. Therefore, we hold that the clerk exceeded his statutory authority by reducing Stedman's attorney's fees.

As we noted, the proper avenue for an aggrieved creditor to challenge a distribution of attorney's fees in the trustee's final report is not before the clerk, but rather by filing a separate action for breach of fiduciary duty. *See Mills*, 216 N.C. at 665-66, 6 S.E.2d at 549-50. However, as we also have held, in this context only the foreclosing lienholder may bring such a claim. *See, e.g., id.* at 669-71, 6 S.E.2d at 552-53. Therefore,

**IN RE FORECLOSURE OF VOGLER REALTY, INC.**

[365 N.C. 389 (2012)]

because CommunityOne is a third priority lienholder, it lacks standing to challenge the distributions in Stedman's final report. Accordingly, we hold that, absent a viable challenge for breach of fiduciary duty from a creditor with standing, Stedman's payment of attorney's fees to himself in addition to a trustee's commission cannot be upset.

We are mindful of the dissent's concerns that we may be left with a "wrong that has no remedy." Nonetheless, we also are mindful of this Court's prior reluctance to wade into matters best left to the legislative process for discussing and determining the best resolution to such a problem. *See State v. Leandro*, 346 N.C. 336, 259, 488 S.E.2d 249, 354-55 (1997). "The legislature, unlike the courts, is not limited to addressing only cases and controversies brought before it by litigants. The legislature can properly conduct public hearings and committee meetings at which it can hear and consider the views of the general public as well as . . . experts and permit the full expression of all points of view as to" the best resolution for the complicated issues that now arise in a multi-creditor real estate market, should it see such a need. *Id.* We therefore affirm the opinion of the Court of Appeals.

AFFIRMED.

Justice NEWBY, dissenting.

Today we are faced with a power of sale trustee-attorney who mistakenly paid himself an attorney's fee based on N.C.G.S. § 6-21.2(2). The question before us is whether there is a judicial role in correcting that error. Though it recognizes that the trustee improperly relied on N.C.G.S. § 6-21.2(2), the majority holds that the clerk of superior court lacks the authority to determine the reasonableness of that fee. The majority's rigid view gives the trustee sole power over the distribution of proceeds in a power of sale foreclosure. Here this position results in a clear wrong that has no remedy, but requires this Court to overlook it nonetheless. Foreclosure by power of sale is a special judicial proceeding in which the clerk has judicial authority. To hold that the clerk nonetheless lacks authority to determine whether proceeds were distributed lawfully and reasonably would ignore the statutory framework under which power of sale foreclosures occur and the clerk's judicial role in that system. This cannot be what the General Assembly intended. Therefore, I respectfully dissent.

In this case the power of sale foreclosure was carried out under a deed of trust that provided for payment of "reasonable" attorney's fees in the event of such foreclosure. After the foreclosure sale the trustee,

who also acted as the trustee's attorney, based on his misunderstanding of the law paid himself an attorney's fee of fifteen percent of the outstanding balance that the first priority creditor was owed on the promissory note. The clerk of superior court, believing he had the judicial power to correct this error, reduced the amount of attorney's fees such that the trustee's total compensation equaled the value of all services he actually performed.

In North Carolina clerks of superior court have no power other than that which is given to them by statute. *In re Locklear*, 314 N.C. 412, 416, 334 S.E.2d 46, 49 (1985). For the reasons stated by the majority, I agree that N.C.G.S. § 32-61 does not give clerks the authority to determine the reasonableness of attorney's fees in these cases. The authority to assess reasonableness can nonetheless be found in our statutes. N.C.G.S. § 7A-40 states that "[t]he clerk of superior court . . . in the exercise of other judicial powers conferred upon him by law in respect of special proceedings . . . is a judicial officer of the Superior Court Division." N.C.G.S. § 7A-40 (2011). This Court has interpreted this statute to "confer[ ] judicial power in special proceedings upon the clerk." *In re Locklear*, 314 N.C. at 416, 334 S.E.2d at 49; *see also In re Estate of Adamee's*, 291 N.C. 386, 396, 230 S.E.2d 541, 548 (1976) (" '[T]he Clerk of Superior Court retains his pre-existing judicial powers in . . . special proceedings . . . as a judicial officer . . . .' " (citation omitted)). Indisputably, a foreclosure by power of sale is a special proceeding. Clerks, then, have judicial power in a power of sale foreclosure proceeding, which includes the power to determine reasonableness of attorney's fees.

Though the majority holds that there is no allowable review of a fee paid under the deed of trust's "reasonable fee" provision, the judicial role of the clerk remains the same in cases in which an instrument provides for reasonable attorney's fees. In such cases, courts of this state will inquire into the reasonableness of fees. *See Nucor Corp. v. Gen. Bearing Corp.*, 333 N.C. 148, 150, 156, 423 S.E.2d 747, 748, 751-52 (1992) (indicating that, had a stock purchase agreement providing for reasonable attorney's fees been governed by N.C.G.S. § 6-21.2, the court nonetheless would have inquired into the reasonableness of the award); *see also West End III Ltd. Partners v. Lamb*, 102 N.C. App. 458, 459-61, 402 S.E.2d 472, 473-74, *disc. rev. denied*, 329 N.C. 506, 407 S.E.2d 857 (1991); *Coastal Prod. Credit Ass'n v. Goodson Farms, Inc.*, 70 N.C. App. 221, 227-29, 319 S.E.2d 650, 655-56, *disc. rev. denied*, 312 N.C. 621, 323 S.E.2d 922 (1984). Therefore, when a deed of trust provides for reasonable attorney's fees in a power of sale foreclosure, the clerk of

**IN RE FORECLOSURE OF VOGLER REALTY, INC.**

[365 N.C. 389 (2012)]

court, as the judicial officer in that special proceeding, has the power to determine the reasonableness of the fees awarded.

When attorney's fees are appropriate and the amount is not fixed by instrument, statute, or otherwise, it is within the court's discretion to approve the amount of the fee. *See Owensby v. Owensby*, 312 N.C. 473, 475, 322 S.E.2d 772, 774 (1984); *see also Goodson Farms*, 70 N.C. App. at 227-29, 319 S.E.2d at 655-56. The amount of the fee must be reasonable, *Hood v. Cheshire*, 211 N.C. 103, 105, 189 S.E. 189, 190 (1937), a determination that involves consideration of a number of factors. These factors include, *inter alia*, "the nature and scope of legal services rendered," "the customary fee," and " 'the novelty and difficulty of the questions of law.' " *Owensby*, 312 N.C. at 476-77, 322 S.E.2d at 774. In particular, the courts of this state have repeatedly emphasized that the actual number of hours worked is significant in this analysis. *See id.; Hood*, 211 N.C. at 105, 189 S.E. at 190; *Lamb*, 102 N.C. App. at 461, 402 S.E.2d at 475; *Lowder v. All Star Mills, Inc.*, 82 N.C. App. 470, 478, 346 S.E.2d 695, 700 (1986) ("There are no findings indicating the number of hours reasonably expended . . . . The findings are deficient under [Supreme Court precedent]." (citation omitted)).

In concluding that clerks have a judicial role in determining reasonableness of fees, it is necessary to explain why *In re Foreclosure of Ferrell Brothers Farms, Inc.*, 118 N.C. App. 458, 455 S.E.2d 676 (1995), and *In re Foreclosure of Webber*, 148 N.C. App. 158, 557 S.E.2d 645 (2001), misinterpret N.C.G.S. § 45-21.33. In those cases the Court of Appeals held that under N.C.G.S. § 45-21.33(b), the clerk's "audit" of the final report of sale is limited to "determin[ing] whether the entries in the report reflect the actual receipts and disbursements made by the trustee." *In re Webber*, 148 N.C. App. at 161, 557 S.E.2d at 647; *In re Ferrell Bros. Farms*, 118 N.C. App. at 461, 455 S.E.2d at 678. Here the trustee relies on this statement to argue that the clerk is therefore barred from inquiring into the reasonableness of those entries. The statutory framework under which power of sale foreclosures are carried out demonstrates that this assertion is incorrect.

The General Assembly has provided specific procedures for conducting a power of sale foreclosure. Among these is a provision governing the distribution of sale proceeds. N.C.G.S. § 45-21.31(a) (2011). Under the statute the proceeds must be distributed in a particular order by the trustee, *id.*, and the trustee's commission and attorney's fees are paid out of the proceeds, *id.; see also In re Ferrell Bros. Farms*, 118 N.C. App. at 460-61, 455 S.E.2d at 677-78. These disbursements are to be disclosed in the final report of the sale. N.C.G.S. § 45-21.33(a) (2012). To

IN RE FORECLOSURE OF VOGLER REALTY, INC.

[365 N.C. 389 (2012)]

hold that the clerk's audit power under N.C.G.S. § 45-21.33 extends only to determining whether the entries reflect actual receipts or disbursements means the clerk cannot evaluate the report to determine whether the distributions were made in compliance with the provisions of N.C.G.S. § 45-21.31(a) specifying how sales proceeds are to be distributed. Notwithstanding whether the trustee's misapplication was intentional or negligent, the majority would say there is no power to review the trustee's distribution of proceeds. This holding would seem to give the trustee unrestrained power to violate the statute. We cannot assume that the General Assembly would enact a provision specifying the order of distribution of proceeds in a foreclosure sale without intending that the provision be enforceable by some means—in this case by the judicial officer charged with supervising the sale. *See Hall v. Simmons*, 329 N.C. 779, 784, 407 S.E.2d 816, 818 (1991) (" '[S]ignificance and effect should, if possible, . . . be accorded every part of the act, including every section, paragraph, sentence or clause, phrase, and word.' " (alternations in original) (citation omitted)). I agree with the majority's conclusion that N.C.G.S. §§ 6-21.2(2) and 32-61 do not provide this enforcement mechanism. Nevertheless, the General Assembly has given the clerk a judicial role in special proceedings. The clerk has specific duties under the statutory framework of Chapter 45, as well as the more general supervisory authority awarded by N.C.G.S. § 7A-40.

Here the clerk appropriately acted within his judicial power and properly concluded that the trustee paid himself an unreasonable attorney's fee. The clerk multiplied the 71.8 hours the trustee worked on the matter by the trustee's standard charge for legal services of $300.00 per hour, producing a total of $21,540.00. After approving the trustee's commission of $16,813.12, the clerk reduced the attorney's fee to $4,726.88, recognizing that a reasonable attorney's fee is one that accurately reflects the amount of work performed. This brought the trustee's total fee to $21,540.00, a payment equal to the value of the services he provided.

Because power of sale foreclosures are a special proceeding in which clerks of superior court have judicial power, clerks are authorized to exercise the courts' general power to determine the reasonableness of attorney's fees paid by the trustee-attorney to himself. The analysis of reasonableness properly includes an inquiry into the value of the services actually performed, as the clerk did here. Consequently, I respectfully dissent.

Justices TIMMONS-GOODSON and HUDSON join in this dissenting opinion.