NO. COA13-1334

NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

IN RE:
GREGORY S. LYNN and
RENEE J. LYNN,
    Plaintiffs,

v.                            Union County
                                    No. 13 CVS 1460

FEDERAL NATIONAL MORTGAGE
ASSOCIATION and SETERUS, INC.,
    Defendants.

Appeal by plaintiffs from order entered 11 July 2013 by Judge W. David Lee in Union County Superior Court. Heard in the Court of Appeals 24 April 2014.

> *Elliot Law Firm, PC, by Michael K. Elliot, for Plaintiffs-Appellants.*

> *No brief filed on behalf of Defendants-Appellees.*

HUNTER, JR., Robert N., Judge.

Gregory S. Lynn and Renee J. Lynn (collectively, "Plaintiffs") appeal from a final order dismissing their complaint under N.C. R. Civ. P. 12(b)(6). Plaintiffs contend that their complaint shows the existence and breach of a fiduciary duty owed to them by Federal National Mortgage Association ("Fannie Mae") and Seterus, Inc. ("Seterus")

(collectively "Defendants"). For the following reasons, we affirm the trial court's order.

## I. Facts & Procedural History

The complaint states the following facts. Plaintiffs owned a home at 1012 King Grant Way in Matthews. On 19 April 2007, plaintiff Gregory Lynn executed a promissory note ("the Note") to JP Morgan Chase Bank ("Chase") with a principal balance of $360,000. The loan was described on the Note as an "Interest First Note." On 19 April 2007, Plaintiffs also executed a deed of trust ("the Deed") securing the Note.[1] The Deed was recorded in Union County and named Constance R. Stienstra as the trustee and Chase as the lender and beneficiary of the instrument.

In early 2011, Plaintiffs received notice that Seterus had become the servicer of the loan and that Fannie Mae was the holder of the Note and Deed after having purchased the Note at some point after 19 April 2007. The complaint indicates that a "Substitute Trustee" was appointed at some point after 19 April 2007 and references a "Defendant Substitute Trustee," but does not identify either party. Plaintiffs' appellate brief identifies the substitute trustee as "Trustee Services of

---

[1] The Deed and Note were not included in the record on appeal.

Carolina, Inc."[2]

On 26 October 2011, after Plaintiffs fell behind on payments, "Plaintiffs received a 'Notice of Hearing,' from Defendant Substitute Trustee which initiated a Union County Special Proceeding Case entitled: 'Foreclosure of Real Property Under Deed of Trust from Gregory Scott Lynn and Renee Jeanette Lynn . . . .'" Plaintiffs filed for Chapter 13 bankruptcy on 28 December 2011, which was later converted to a Chapter 7 filing. Fannie Mae filed a motion for relief from the automatic stay. Plaintiffs filed a motion in response challenging Fannie Mae's status as the holder of the Note. Both Fannie Mae and Seterus were granted relief from the automatic stay, but there were no findings of fact relating to their status as the holder of the Note.

On 21 May 2012, before the entry of the order granting relief from the automatic stay, Plaintiffs received documents from Seterus indicating Plaintiffs could modify their loan. Plaintiffs promptly signed and returned those documents. As part of the modification, Plaintiffs were required to make three trial payments of $2,332.14 on 1 July 2012, 1 August 2012, and 1 September 2012. On 30 June 2012, Plaintiffs sent their initial

---

[2] At Defendants' 12(b)(6) hearing, Plaintiffs and Defendants both stated that the trustee is not a party to this case.

July payment. However, Plaintiffs sent $2,300.00 instead of the required $2,332.14. Because Plaintiffs remitted an incorrect amount, Defendants rejected the loan modification.

Following the rejection, the "Substitute Trustee" gave notice to Plaintiffs of the foreclosure sale which was to take place on 5 September 2012. After the sale, but prior to the expiration of the ten-day upset bid period, Plaintiffs filed an action designated 12 CVS 2676 enjoining the foreclosure sale pursuant to N.C. Gen. Stat. § 45-21.34 (2013).

On 28 January 2013, "Plaintiffs, by and through Counsel, requested from Counsel for Defendants a re-instatement quote so that Plaintiffs could exercise their Right of Redemption . . . ."[3] The same day, Defendants sent an email to Plaintiffs' counsel asking Plaintiffs to make a settlement offer. Plaintiffs offered to send a discounted lump sum to Defendants sometime between 28 January 2013 and 25 March 2013. Plaintiffs assert they had a family friend that was "ready, willing, and able to pay the re-instatement amount." Plaintiffs state that the offer was eventually rejected sometime before 25 March 2013. During the intervening period, Defendants provided

---

[3] During the 12(b)(6) hearing, Plaintiffs moved to amend their complaint to specifically allege the statutory right of redemption in addition to the right of reinstatement. The court did not respond to that request at the 12(b)(6) hearing.

no redemption or reinstatement quote. The 12(b)(6) hearing transcript indicates that after Plaintiffs made a lump sum offer, Plaintiffs made no attempt to contact Defendants regarding redemption until after Defendants rejected Plaintiffs' offer. At the 12(b)(6) hearing, Plaintiffs argued that proffering any estimate of a reasonable offer was futile because Defendants rejected the loan modification payment for being $32.14 short.

Following the 25 March 2013 hearing concerning 12 CVS 2676, the court dissolved the preliminary injunction. On 23 April 2013, a "Substitute Trustee's" deed was recorded which conveyed the property to Fannie Mae. Plaintiffs received a letter from Defendants disclosing the payoff amount for the loan on 29 April 2013, after the upset period had passed. Plaintiffs were given notice to vacate their home on 9 May 2013. According to Plaintiffs' appellate brief, Plaintiffs have since vacated the home.

On 30 May 2013, following the dismissal of the claims in 12 CVS 2676, Plaintiffs filed the present complaint for preliminary injunction, breach of fiduciary duty, misrepresentation, and unfair and deceptive trade practices. Plaintiffs also filed a motion for a temporary restraining order against Defendants on

30 May 2013. The motion was denied on 6 June 2013. Defendants then filed a motion to dismiss under N.C. R. Civ. P. 12(b)(6) and a motion for attorneys' fees on 10 June 2013. Defendants amended these motions on 21 June 2013. Judge Lee granted the motion to dismiss on 12 July 2013 and denied Defendants' motion for attorneys' fees. Plaintiffs provided timely written notice of appeal on 26 July 2013.

## II. Jurisdiction & Standard of Review

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2013) as Plaintiff appeals from a final order of the superior court as a matter of right.

"'On a Rule 12(b)(6) motion to dismiss, the question is whether, as a matter of law, the allegations of the complaint, treated as true, state a claim upon which relief can be granted.'" *Allred v. Capital Area Soccer League, Inc.*, 194 N.C. App. 280, 282, 669 S.E.2d 777, 778 (2008) (quoting *Wood v. Guilford Cnty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002)). "This Court must conduct a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, *aff'd per curiam*, 357 N.C. 567, 597 S.E.2d 673

(2003).

> Dismissal under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.

*Wood*, 355 N.C. at 166, 558 S.E.2d at 494.

"Under *de novo* review, we examine the case with new eyes." *State v. Young*, ___ N.C. App. ___, ___, 756 S.E.2d 768, 779 (2014). "[*D*]*e novo* means fresh or anew; for a second time, and an appeal *de novo* is an appeal in which the appellate court uses the trial court's record but reviews the evidence and law without deference to the trial court's rulings." *Parker v. Glosson*, 182 N.C. App. 229, 231, 641 S.E.2d 735, 737 (2007) (quotation marks and citations omitted). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (quotation marks and citation omitted).

## III. Analysis

Plaintiffs argue that the statutory right of redemption created by N.C Gen. Stat. § 45-21.20 (2013)[4] gives rise to a fiduciary relationship requiring disclosure of the redemption amount upon a debtor's request. After careful review, we disagree and affirm the trial court.

### A. Fiduciary Relationship in Redemption

"For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001). Fiduciary relationships are established when a special confidence is placed in a party which is bound to act in good faith and in the best interest of the party who reposes that confidence. *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931). A number of relationships traditionally give rise to fiduciary

---

[4] The statutory right to redemption provides that a debtor may terminate the power of sale by tendering the remaining obligation secured by the deed of trust and expenses incurred in the sale of the property before the foreclosure sale or within the upset bid period. N.C. Gen. Stat. § 45-21.20. Plaintiffs requested a "re-instatement quote" in their complaint and also referenced the statutory right of redemption in their complaint.

Plaintiffs clarified at the 12(b)(6) hearing that they intended to include the right of redemption and asked, if need be, to amend their complaint to include this claim. On appeal, Plaintiffs do not raise any argument concerning a contractual right to reinstatement and thus abandon any argument relating to reinstatement. N.C. R. App. P. 28(b)(6).

duties, such as attorney and client, broker and principal, guardian and ward, and trustee and beneficiary. *Id*. Fiduciary duties may also be established in "a variety of circumstances" within *any relationship* "where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Id*. The determination of such a relationship is generally a question of fact to be determined by the jury. *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 178, 684 S.E.2d 41, 53 (2009).

Our Supreme Court recently addressed the fiduciary duties inherent in a typical debtor-creditor relationship in *Dallaire v. Bank of America*, ___ N.C ___, ___, ___ S.E.2d ___, ___, 51PA13, 2014 WL 2612658 (2014):

> Ordinary borrower-lender transactions, by contrast, are considered arm's length and do not typically give rise to fiduciary duties. In other words, the law does not typically impose upon lenders a duty to put borrowers' interests ahead of their own. Rather, borrowers and lenders are generally bound only by the terms of their contract and the Uniform Commercial Code. Nonetheless, because a fiduciary relationship may exist under a variety of circumstances, it is possible, at least theoretically, for a particular bank-customer transaction to give rise to a fiduciary relation given the proper circumstances.

*Id.* at \_\_\_, \_\_\_ S.E.2d at \_\_\_, 2014 WL 2612658 at \*4 (citations and quotation marks omitted). Applying this test in *Dallaire*, our Supreme Court found that "[a] loan officer's mere assertion that the Dallaires could obtain a first priority lien mortgage loan" was not sufficient to allow our Supreme Court to conclude the Dallaires reposed fiduciary duties in Bank of America. *Id.* (citation and quotation marks omitted).

The right of redemption may arise in any typical foreclosure proceeding; it is a statutorily created right to terminate a power of sale. N.C Gen. Stat. § 45-21.20. Nothing about the statute indicates that the moment a debtor attempts to act upon its right of redemption is anything other than an ordinary part of a debtor-creditor relationship during foreclosure proceedings. As this is an ordinary feature of debtor-creditor relationships, here the debtor or creditor must show some additional fact which tends to elevate the relationship above that of a typical debtor and creditor.

Here, Plaintiffs simply assert that a fiduciary relationship is created by Plaintiffs' invocation of the right of redemption or Defendants' response email requesting Plaintiffs make an offer to pay off the loan. As in *Dallaire*, merely invoking a statutorily created right in a debtor-creditor

transaction, like a loan officer making assertions concerning possible lien priorities, does not alone create a fiduciary relationship. *Dallaire*, ___ N.C. App. at ___, ___ S.E.2d at ___, 2014 WL 2612658 at *4. As Plaintiffs fail to disclose any additional facts supporting the existence of a fiduciary relationship, dismissal was proper under N.C. R. Civ. P. 12(b)(6), as this was a normal debtor-creditor relationship.[5]

## B. Trustee Fiduciary Relationship

Trustees,[6] on the other hand, have a long-recognized fiduciary duty to both the debtor and creditor in a typical

---

[5] In *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 418 S.E.2d 694 (1992), this Court held that no fiduciary duty existed where borrowers relied on outside counsel and advice as well as representations made by a lender. *Id.* at 60-61, 418 S.E.2d at 699. The reliance on the advice from a banker, accountant, and their business partner showed that they had not reposed any sort of special confidence with the plaintiff. *Id*.

Here, Plaintiffs were represented by an attorney when they requested the redemption amount. Plaintiffs' attorney initially requested the redemption price, received Defendants' email requesting that Plaintiffs make an offer, and replied with the sum which was eventually rejected. As Plaintiffs relied on outside counsel, dismissal is also proper under the standard announced in *Branch Banking & Trust*.

[6] In this case, it seems that the parties substituted the trustee at some point before Plaintiff fell behind on payments. The parties are generally free to substitute a trustee. N.C. Gen. Stat. § 45-10 (2013). The substitute trustee is generally vested with the powers of the original trustee, and among those powers is the power to proceed with foreclosure upon a deed in default. *Id.; Pearce v. Watkins*, 219 N.C. 636, 642, 14 S.E.2d 653, 656 (1941).

foreclosure proceeding. *In re Vogler Realty, Inc.*, 365 N.C. 389, 397, 722 S.E.2d 459, 465 (2012). The trustee, vested in a position of power by the debtor and creditor, is bound to act in the interests of the parties and exercise its powers accordingly. *Id.* at 397, 722 S.E.2d at 465.

The complaint shows that neither Fannie Mae nor Seterus were the trustee or the substitute trustee when Defendants requested Plaintiffs make a lump sum offer, nor at any other point in the proceedings. At the 12(b)(6) hearing, both parties stated that the trustee is not a defendant in the case. Moreover, in Plaintiffs' appellate brief, Plaintiffs name the substitute trustee as Trustee Services of Carolina, LLC. As no facts indicate that the trustee or substitute trustee was joined as a defendant, no party owing a fiduciary duty to Plaintiffs is a party to this breach of fiduciary duty claim. Accordingly, dismissal under N.C. R. Civ. P. 12(b)(6) was proper.

## IV. Conclusion

For the reasons stated above, the decision of the trial court is

AFFIRMED.

Judges STROUD and DILLON concur.